United States District Court
Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR-12-00777-CW (KAW) |
| Plaintiff, | DETENTION ORDER |
| v. | |
| NATHANIEL YANCEY, | |
| Defendant. | |

## I. BACKGROUND INFORMATION

Defendant Nathaniel Yancey is charged by indictment with violations of 21 U.S.C. §§ 841 (a)(1) and (841(b)(1)(D)(possession with intent to distribute marijuana, 18 U.S.C. § 924(c)(1)(A) (carrying and possessing a firearm during, in relation to, and in furtherance of a drug trafficking crime), and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm and ammunition).  On October 29, 2012, Defendant waived his right to a detention hearing and waived findings, without prejudice, and while reserving his right a detention hearing at a later date. On March 5, 2013, Defendant requested a detention hearing pursuant to the Bail Reform Act, as permitted by 18 U.S.C. § 3142(f).  Pretrial Services prepared a full bail study.  On March 20, 2013, the court conducted a detention hearing.  Defendant was present, in custody, and represented by Assistant Federal Public Defender Ellen Leonida.  Assistant United States Attorney James Mann appeared on behalf of the Government.  For the reasons set forth below, the court orders that Defendant be detained.

## II.  LEGAL ANALYSIS

The Bail Reform Act requires that in a pretrial posture, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be

DETENTION ORDER
CR-12-00777-CW (KAW)                    1

1  mitigated through the imposition of conditions of release.  If the government does not meet its

2  burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain

3  out of custody during the preparation of his or her defense, while safeguarding against flight or

4  danger to the community.  Close cases should result in release: "[t]o give effect to the principle

5  that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to

6  rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal.

7  1992) (Walker, J.) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

8          A person facing trial generally shall be released if some "condition, or combination of

9  conditions . . . [can] reasonably assure the appearance of the person as required and the safety of

10  any other person and the community."  18 U.S.C. § 3142(c).  In non-capital cases, pretrial release

11  should be denied "[o]nly in rare circumstances." *Motamedi,* 767 F.2d at 1405; *see also United*

12  *States v. Salerno*, 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n

13  our society liberty is the norm, and detention prior to trial or without trial is the carefully limited

14  exception").  Bail hearings generally proceed by proffer, and the rules of evidence do not apply.

15  18 U.S.C. § 3142(f).  At the hearing, the court determines whether any conditions in section

16  3142(c) will reasonably assure the defendant's appearance and the safety of the community or

17  another person. *Id.*  The Bail Reform Act "mandates release of a person facing trial under the

18  least restrictive condition or combination of conditions that will reasonably assure the appearance

19  of the person as required." *Motamedi*, 767 F.2d at 1405.

20          In evaluating whether pretrial release is appropriate, a court must consider  (1) the nature

21  and circumstances of the offense, (2) the weight of the evidence, (3) the history and

22  characteristics of the person (including his character, physical and mental condition, family ties,

23  employment, financial resources, length of residence in the community, community ties, past

24  conduct, history relating to drug and alcohol abuse, criminal history, or record concerning

25  appearance at court proceedings), and (4) the nature and seriousness of the danger to any person

26  or the community posed by the person's release.  18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at

27  1407.

28

DETENTION ORDER
CR-12-00777-CW (KAW)                                2

1      The indictment charges that on October 17, 2012, Defendant knowingly possessed

2   marijuana with the intent to distribute.  In addition, Defendant, having previously been convicted

3   of a felony, Defendant possessed a Smith & Wesson, Model SW40VE, .40 caliber semiautomatic

4   handgun, with serial number PDC1612; and 6 live rounds of .40 caliber ammunition.

5   **A.  The Nature and Circumstances of the Offense and Weight of the Evidence**

6      The offenses charged in this case are felon in possession of a firearm and ammunition,

7   distribution of a controlled substance, and carrying and possessing a firearm during, in relation to,

8   and in furtherance of a drug trafficking crime, which gives rise to a rebuttable presumption of

9   detention. 18 U.S.C. §§ 3142(e)(2), (f)(1)(E).  The presumption of detention shifts the burden of

10  *production* to the defendant; the ultimate burden of persuasion remains with the government.  *See*

11  *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

12     As to the weight of the evidence, while this is the least important factor, according to the

13  affidavit supporting the original complaint, Defendant was arrested because he was with a group

14  of individuals in North Richmond in violation of a term of his supervised release, which

15  prohibited him from being in North Richmond without the approval of his probation officer.

16  When Richmond Police approached, Defendant fled on his bicycle and rode away. He was

17  pursued on foot and in a patrol car. He was ultimately apprehended in the bathroom of the North

18  Richmond Senior Center. At the time of his arrest, officers recovered a baggie containing

19  approximately 19 grams of marijuana.  Yancey also discarded a digital scale during the pursuit,

20  which was recovered by one of the pursuing officers.  This factor weighs in favor of detention.

21  **B.  The History and Characteristics of the Defendant and the Nature and Seriousness of**
22  **the Danger to Any Person or the Community**

23     Defendant is 34 years old and, prior to his incarceration, resided in San Pablo, California

24  for three months. Defendant has a transient residential history, partly due to incarceration, but has

25  lived in the San Francisco Bay Area his entire life.  He obtained his high school diploma from the

26  N.A. Chaderjian High School located within the California Youth Authority in Stockton,

27  California.  Defendant has been unemployed since his arrest in July 2012. Prior to being

28  unemployed, Defendant reported that he worked as a forklift operator/stocker for Goodwill in San

DETENTION ORDER
CR-12-00777-CW (KAW)                                  3

*United States District Court*
*Northern District of California*

1    Francisco for six months.  Defendant also reported that he worked as a dishwasher at Skates

2    Restaurant in Berkeley for one year. He has no other employment history.

3         Defendant's criminal history dates back to 1990, when, as a juvenile, he was arrested for

4    assault with a deadly weapon, and was sent to juvenile hall. He was involved in two other

5    incidents of violence that resulted in him being sent to juvenile hall.  In 1996, also as a juvenile,

6    Defendant sustained a felony conviction for possession of cocaine base for sale, and was

7    sentenced to three years with the California Youth Authority.  In 1998, Defendant was convicted

8    of assault with a firearm and a parole violation and was sentenced to five years in prison.  In

9    2003, Defendant was released and was sent back to prison for a parole violation and possession of

10   marijuana for sale. In 2006, Defendant was convicted of being a felon in possession of a firearm,

11   one of the charged counts in the instant matter, and sentenced to 72 months and three years of

12   supervised release.  Defendant started his term of supervised release with U.S. Probation on

13   February 17, 2012, with a release date of June 16, 2016. Defendant first violated the terms of his

14   current supervised release on June 26, 2012, which resulted in 18 days in custody and 35 month

15   term of supervised release.  The instant offense was allegedly committed on October 17, 2012,

16   within 12 hours of release from the electronic monitoring that was imposed as a result of his June

17   26 violation.  Defendant's pattern of violating the conditions of supervised release shortly after

18   his release from custody shows that he is not amenable to community supervision.  This was

19   confirmed by his probation officer who described him as difficult to supervise and "very

20   dangerous."

21        Defendant proposed his mother Janice Smith and his fiancé Niesha Morris as sureties.

22   Ms. Smith has no cash or property to post and subsists on monthly disability benefits, so she is

23   not a financially viable surety.  Ms. Morris is employed full-time by Contra Costa County. While

24   she is in better financial condition, she told Pretrial Services that she had no arrest history, which

25   was found to be false, making her unsuitable as a surety.

26        Defendant was on federal supervised release in this district at the time of the current

27   offense, and has a long history of violating the terms of his supervised release.  Defendant's

28   propensity to violate the terms of release suggests that no viable surety, even if he had one, would

DETENTION ORDER
CR-12-00777-CW (KAW)                    4

United States District Court
Northern District of California

1  provide sufficient moral suasion for him to abide by the terms of release.  Moreover, Defendant's

2  prior firearm convictions—for one of which he is currently on supervised release and currently

3  facing charges—shows that he is a danger to the community.

### C. Risk of Nonappearance

5  Factors that indicate Defendant poses a risk of nonappearance include his current

6  unemployment status and minimal employment history.  He also fled from police at the time of

7  his arrest in this case.  Defendant has used eleven aliases/variations of his own name, two

8  alternate dates of birth, and four social security numbers.  Mitigating factors include his ties to the

9  community and lifelong residence in this district.  Defendant has no history of failing to appear.

10  There are likely conditions that would reasonably assure his appearance.

### III.  CONCLUSION

12  In light of Defendant's criminal history, the nature of the instant offense, and the weight of

13  the evidence, the Court finds that Defendant presents a danger to the community, and that there

14  are no conditions or combination of release conditions that will reasonably assure the safety of

15  any other person or the community.

16  For the reasons set forth above, Defendant shall remain committed to the custody of the

17  Attorney General for confinement in a corrections facility separate, to the extent practicable, from

18  persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall

19  be afforded reasonable opportunity for private consultation with counsel.  On order of a court of

20  the United States or on request of an attorney for the Government, the person in charge of the

21  corrections facility in which Defendant is confined shall deliver Defendant to a United States

22  marshal for the purpose of an appearance in connection with a court proceeding.

23  IT IS SO ORDERED.

24  DATED: March 26, 2013

_____
KANDIS A. WESTMORE
United States Magistrate Judge

DETENTION ORDER
CR-12-00777-CW (KAW)                        5